Chief Justice Watkins delivered the opinion of the Court. This was a bill in chancery, in the Johnson circuit court, to enjoin a judgment of allowance in the probate court of that county, in favor of the appellant, against the estate of Lorenzo N. Clarke. The suit appears to have been ex parte, and upon constructive notice, throughout its whole progress in the circuit court. Where such is the case, in reviewing the proceedings on appeal, this court will see that all the requirements of the statute, whereby the defendant is deemed in law to be affected with notice, have been substantially complied with; and where this has been done, it remains for the court to be satisfied that the allegations of the bill are sufficient to warrant the relief prayed for and granted by the decree, and where the confession is thus implied, a greater degree of certainty is required in the complainant’s allegations, than where the decree is rendered upon actual service of subpoena, or the appearance of the defendant, and no intendment of a fact not within the allegations, can be made to support such a decree. Brodie vs. Skelton, 6 Eng. 132. If the statute required all publications to be made in some one or more newspapers selected, in a mode to be provided by law, as the medium for judicial notices, it might afford a better assurance of the best practical substitute for the actual service of process. But under the law, as itnow stands, providing only for the order of publication to be inserted, for two weeks, in “some newspaper” published in the State, no matter how local or limited in its circulation, it is obvious that, in many instances, important rights of a defendant may be passed upon and concluded by judicial sentence, where he has had, in fact, no actual notice of the proceedings, and consequently no opportunity of asserting his rights in defence of the suit. Although, in this case, it appears that the order of publication was sufficient, and made in accordance with the statute, it is worthy of remark that, when the' temporary injunction was granted, no notice whatever of the application appears to have been given to the defendant, or his known agent or attorney; nor does it appear that any notice was put up in the clerk’s office, as required when the defendant does not reside in the county, and has no known agent or attorney within the same. The injunction was granted however, but when issued, was a command directed only to the sheriff that he desist from proceeding with the execution of the judgment of the probate court, and the only service endorsed upon it is the return of the sheriff that, as commanded, he had desisted, and would proceed no further with the execution. Although the irregularity of these proceedings could not affect the validity of the final decree rendered in the cause, yet, to the extent that they were calculated to deprive the appellant of those means of notice of the pendency of the suit, we must regard them as erroneous. It is the first duty of a court, in the exercise of original jurisdiction, and in proportion to the extent that presumptions are indulged in its favor, to watch, with jealous care, the means by which that jurisdiction is acquired. And we doubt not that the chancellor, in a suit against non-resident defendants, and affecting their rights, the proceeding being in personam, and where he had reason to believe that the process of publication had not been equivalent to actual notice, would have the authority, upon his own motion, to require the complainant to serve a copy of the bill and notice of the commencement of the suit upon such defendant, if his residence is known, or could be ascertained. The complainant may do this under the statute, and we see no reason why the court, in the exercise of its sound discretion, in any given case, may not require him to do it, not merely to be satisfied of its own jurisdiction, or to guard the rights of the defendant in that particular suit, but upon the ground of public policy, to prevent further litigation, and to inspire with confidence all persons who are or may become interested in the decision or its ulterior consequences. The next inquiry is as to the sufficiency of the allegations in the bill, the gravamen of which may be thus briefly stated: That Lorenzo N. Clark, as the agent of the appellant, held certain claims belonging to him, and which he was to collect, or account for, amounting in all to $1,791 61, among which was a claim on Lassiter’s estate for $1,200. That, in 1841, L. N. Clarke paid to the appellant’s agent $700, and at the same time gave him a statement of the business showing a balance in favor of the appellant of $1,091, which he kept for several years and never objected to. That L. N. Clarke died in January, 1845, and after that, but when it does not appear, the appellant received two negroes bought of Lassiter’s estate at $814, and one of the notes for $190. That, on the 9th January, 1846, the appellant’s agent came on and demanded a settlement with the executor and executrix of L. N. Clarke, and upon the settlement, they allowed a balance to the appellant of $815 07, having computed interest at 10 per cent, when, in fact, they should only have allowed but 6 per cent., making in the settlement a difference of $354. That the reason, as complainant believed, why they allowed 10 per cent., was that they supposed the judgment against Lassiter’s estate bore interest at that rate, when it was only at 6 per cent., and this fact did not come to the complainant’s knowledge until long after the settlement was made; that the settlement so allowed was presented to the probate court for classification, and that the court classed the claim and rendered judgment for $1,005 07, instead of $815 07, the amount allowed, making a difference of $190 00; that, at the same term of the probate court, the executor and executrix resigned, and the complainant was appointed and qualified as administrator, and on the 21st of February, 1846, he paid to the appellant’s agent $575 on the judgment rendered in the probate court; and upon the facts stated he claims that he had overpaid to the appellant what was really and justly due him, and that he ought to be enjoined from having execution of the judgment. The allegations of the bill as a mere explanation of a business transaction, are vague and unsatisfactory, and no exhibits are made in aid of them. No fraud or mistake is alleged on the part of the appellant, or his agent, either in the settlement or in the classification of the claim by the probate court. The allegation that the executor and executrix were mistaken in supposing that the claim against Lassiter’s estate bore 10 per cent, interest, if a ground of relief at all, would be altogether consistent with the supposition that interest at 10 per cent, was due on the other notes, or that the appellant may have claimed it on different grounds. In the absence of any allegation to the contrary, and as the record of the probate court is not exhibited, the presumption must be that the executor and executrix of Clarke*were before the court, or had notice of the judgment rendered by it for $190 more than was allowed on the settlement. No explanation of this is attempted, nor is it charged to be a fraud or mistake, and if it was either, no application appears to have been made to the probate court during that term to set aside or correct it. In our opinion, the circuit court was not justified, upon the allegations of the bill, to open a settlement (for aught that appears) deliberately made, of accounts complicated and of several years standing, much less to enjoin the execution of the judgment of a competent court having jurisdiction of the parties and the subject of its adjudication. Wherefore, the decree of the circuit court in chancery should be reversed, and the cause remanded for further proceedings, with leave to the complainant to amend the bill if asked for, and the appellant to be considered in court as having appeared to the suit.